PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

NATHAN A. CHAPMAN, JR.,

*Defendant-Appellant.*

No. 08-7976

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:03-cr-00301-WDQ-1; 1:08-cv-01268-WDQ)

Argued: December 1, 2009

Decided: January 29, 2010

Before TRAXLER, Chief Judge, and WILKINSON and
MICHAEL, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the
majority opinion, in which Judge Wilkinson joined. Judge
Michael wrote a separate opinion concurring in the judgment.

## COUNSEL

**ARGUED**: Lartease Martrell Tiffith, KIRKLAND & ELLIS,
LLP, Washington, D.C., for Appellant. Jefferson McClure
Gray, OFFICE OF THE UNITED STATES ATTORNEY,

Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

TRAXLER, Chief Judge:

After being convicted of numerous charges, including mail and wire fraud, *see United States v. Chapman*, No. 04-5010, 2006 WL 3539146 (4th Cir. Dec. 8, 2006), Nathan Chapman filed a motion under 28 U.S.C.A. § 2255 challenging his convictions on several grounds. The district court denied relief. We granted a certificate of appealability to permit Chapman to appeal the district court's rejection of his claim that trial counsel was ineffective for ignoring Chapman's direction to accept the district court's offer of a mistrial. For the reasons set forth below, we affirm.

I.

Chapman was the chief executive officer and majority shareholder of various financial services companies, and a portion of the charges against Chapman involved his use of "business development funds" provided by these companies for personal rather than business purposes. The government's theory of the case was that Chapman needed the business development funds to support a lifestyle that he could not otherwise afford. The trial court permitted the government to present, as proof of Chapman's motive, *see* Fed. R. Evid. 404(b), evidence of substantial loans (eventually totaling more than $1 million) that Chapman took from his companies but never repaid.

After the government's rebuttal closing argument, counsel for Chapman objected to a reference by the government to the

loans, believing the reference went beyond the limitations the trial court had placed on the use of the loan evidence. The trial court stated that counsel "might be right," J.A. 20, and directed counsel for Chapman to draft a curative instruction to be given to the jury. Counsel for Chapman then, "just for the record," moved for a mistrial with prejudice. J.A. 20. The trial court offered to grant Chapman a mistrial *without* prejudice, but counsel for Chapman declined, insisting that the mistrial should be with prejudice. The case proceeded, and the trial court gave the curative instruction to the jury. The jury ultimately convicted Chapman on 22 of the charges alleged in the indictment.

In his § 2255 motion, Chapman contended that when the trial court offered to grant a mistrial without prejudice, he instructed his attorney to accept the offer. Chapman argued that his attorney, by rejecting his instructions to accept the mistrial, was constitutionally ineffective and that Chapman was therefore entitled to a new trial. The district court rejected Chapman's claim, concluding that the decision to go forward with the trial rather than accept a mistrial without prejudice was a tactical decision to be made by counsel, not Chapman.

## II.

A criminal defendant's right to counsel as guaranteed by the Sixth Amendment is, of course, a guarantee of the right to *effective* assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on a Sixth Amendment claim of ineffective assistance of counsel, "the defendant must show that his counsel's performance 'fell below an objective standard of reasonableness' in light of the prevailing professional norms." *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688). If the defendant can establish that his attorney's performance was deficient, the defendant must then demonstrate that "there is a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Chapman's ineffective-assistance claim is a narrow one. Chapman does not argue that, given the manner in which the trial had unfolded, the only reasonable decision was to accept the mistrial offer. Nor does Chapman argue that counsel should have consulted with him before rejecting the mistrial offer. Instead, Chapman contends only that counsel's performance was deficient because counsel ignored Chapman's instructions to accept the mistrial offered by the trial court. The government, however, argues that decisions involving mistrials—whether to ask for a mistrial and whether to accept an offer of a mistrial—are tactical decisions that must be made by the attorney, not the defendant. Because the decision belongs to the attorney, the government argues that Chapman's disagreement with the decision made by counsel is simply irrelevant.* We agree with the government.

It is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks omitted). However, "certain decisions regarding the exercise or waiver of basic trial rights are

---

*The government seems to challenge the factual underpinnings of Chapman's claim, questioning whether the trial court was serious in its offer of a mistrial and noting that one of Chapman's trial attorneys stated in an affidavit that he consulted with Chapman about the mistrial and that Chapman agreed with his decision. Because the district court rejected Chapman's claims without holding an evidentiary hearing, we must review the facts in the light most favorable to Chapman. *See United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

of such moment that they cannot be made for the defendant by a surrogate." *Nixon*, 543 U.S. at 187.

The only decisions that have been identified by the Supreme Court as belonging exclusively to the defendant are "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has never suggested that decisions about mistrials are "of such a moment" that they can be made only by the defendant himself, and every circuit to consider the question has concluded that decisions regarding mistrials belong to the attorney, not the client. *See United States v. Burke*, 257 F.3d 1321, 1324 (11th Cir. 2001) ("We . . . reject Defendant's contention that the decision to request a mistrial is a fundamental decision that only a defendant can make."); *United States v. Washington*, 198 F.3d 721, 723 (8th Cir. 1999) ("Washington argues that the defendant must be allowed to make the ultimate decision on whether to request a mistrial. We disagree and hold that the decision to make such a request is a strategic decision for counsel."); *Watkins v. Kassulke*, 90 F.3d 138, 143 (6th Cir. 1996) ("[W]here . . . defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant . . . , regardless of whether the defendant participates in the decision."); *Galowski v. Murphy*, 891 F.2d 629, 639 (7th Cir. 1989) ("The decision whether to move for a mistrial or instead proceed to judgment with the expectation that the client will be acquitted is a matter of trial strategy."). As the Eighth Circuit explained,

> the decision to move for a mistrial often must be made in a split-second and it involves numerous alternative strategies such as remaining silent, interposing an objection, requesting a curative instruction, or requesting an end to the proceeding. Moreover, counsel is generally in a better position than a lay person to judge the impact of a potentially prejudicial incident in the context of the entire trial.

*Washington*, 198 F.3d at 724 (citation omitted).

We likewise conclude that decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client. Preliminarily, we note that mistrial issues bear no similarity, in nature or significance, to the decisions that the Supreme Court has identified as belonging solely to the defendant. Moreover, deciding whether to seek a mistrial (or whether to accept or reject a mistrial offered by the trial court) involves an on-the-fly balancing of the probable damage caused by the trial error against the likelihood that a different jury might be more inclined to acquit—a question that itself requires considering how receptive the current jury is to the defendant, whether key witnesses have testified as anticipated, etc. Given the many issues that must be identified, evaluated, and weighed when determining whether to seek or accept a mistrial, we think it clear that the decision is a tactical one to be made by counsel, not the client.

As noted above, Chapman does not contend otherwise — that is, he does not argue that decisions regarding mistrials are so fundamental that they must be made by the client rather than the attorney. Chapman nonetheless insists that if a mistrial is offered by the trial court *and* the defendant expresses his opinion on whether the offer should be accepted, counsel is obligated to follow the defendant's instructions. We disagree.

A criminal defense attorney is obligated to follow his client's wishes only with regard to the fundamental issues that must be personally decided by the client. As to those limited issues—pleading guilty, waiving a jury, taking the stand, and appealing a conviction or sentence—"an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Nixon*, 543 U.S. at 187. If the decision is a tactical one left to the sound judgment of counsel, the decision must be just that—left to the judgment of counsel. Counsel need not consult with the client about the matter or

obtain the client's consent. *See id.* (The "duty to consult with the client regarding important decisions . . . does not require counsel to obtain the defendant's consent to every tactical decision." (internal quotation marks omitted)); *Sexton*, 163 F.3d at 885 (whether to file a motion to suppress "is a classic tactical decision" for which consent from the defendant was not required).

And if consultation and consent by the client are not required with regard to these tactical decisions, the client's expressed disagreement with counsel's decision cannot somehow convert the matter into one that must be decided by the client. For example, which witnesses to call is a classic tactical decision left to counsel, *see Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."), and it remains a decision for counsel even when the client disagrees, *see Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("[T]he trial court overreached its authority and infringed upon the relationship between Blanco and his attorneys by requiring defense counsel to call two additional witnesses [as requested by the defendant]. Generally, trial tactics are for defense counsel to formulate. The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel." (footnotes omitted)). Likewise, we believe that whether to seek or accept a mistrial is a matter left to the sound judgment of counsel, even if the client disagrees with counsel's decision. *See Burke*, 257 F.3d at 1324 ("[T]he decision to refrain from asking the court for a mistrial is a tactical decision entrusted to defense counsel, binding the defendant *even when the defendant expressed a contrary wish to his lawyer*." (emphasis added)). The reasonableness of the tactical decision actually made by counsel is of course subject to challenge, but the decision is not unreasonable simply because the client expressed a contrary view.

Chapman, however, views his position as a necessary consequence of the agency relationship between the defendant and his attorney:

> [A]s defendant's counsel and agent, defense counsel
> is permitted to make decisions that bind the defen-
> dant as agents generally do with regard to matters
> within the scope of their authority. However, that
> authority is binding only unless and until revoked.
> When the defendant specifically instructs his agent
> to accept a court's offer of a mistrial on his behalf,
> to the extent that the defendant's request is reason-
> able, defense counsel as his agent is obligated to do
> so — his agency to do otherwise is revoked.

Brief of Appellant at 19. While it is of course true that an
attorney is the agent of his client, the attorney's obligations in
a criminal case do not precisely mirror the obligations of a
general agent representing his principal on civil matters. Not-
withstanding the fact that an agent is generally authorized to
act for the principal in all matters within the scope of the
agent's authority, the law requires the criminal defendant, not
his attorney, to make the critical decisions about whether to
plead guilty or go to trial, whether to testify, and whether to
appeal. And notwithstanding the fact that a principal generally
has the authority to dictate the manner in which his agent will
carry out his duties, the law places certain tactical decisions
solely in the hands of the criminal defense attorney. This real-
location of rights and duties is necessary to give effect to the
constitutional rights granted to criminal defendants and to
insure the effective operation of our adversarial system, where
defense attorneys must protect the interests of their clients
while also serving as officers of the court. *See Taylor v. Illi-
nois*, 484 U.S. 400, 417-18 (1988) ("Although there are basic
rights that the attorney cannot waive without the fully
informed and publicly acknowledged consent of the client, the
lawyer has—and must have—full authority to manage the
conduct of the trial. The adversary process could not function
effectively if every tactical decision required client approval."
(footnote omitted)). As the Eleventh Circuit has explained,

> Defense counsel in a criminal trial is more than an
> adviser to a client with the client's having the final

say at each point. He is an officer of the court and a professional advocate pursuing a result—almost always, acquittal—within the confines of the law; his chief reason for being present is to exercise his professional judgment to decide tactics.

. . . . When the defendant is given the last word about how his case will be tried, the defendant becomes his own trial lawyer. If we add to the list of circumstances in which a defendant can trump his counsel's decision, the adversarial system becomes less effective as the opinions of lay persons are substituted for the judgment of legally trained counsel. The sound functioning of the adversarial system is critical to the American system of criminal justice. We intend to defend it.

*Burke*, 257 F.3d at 1323. We therefore reject Chapman's claim that an attorney loses the right to make tactical decisions about the conduct of a criminal trial if the client expresses disagreement with the attorney's decision.

### III.

To summarize, we conclude that decisions involving mistrials — whether to seek a mistrial or accept a mistrial offered by the trial court — are tactical decisions left to the sound judgment of counsel. The decision remains counsel's to make even if the client expresses disagreement with the decision, and counsel's decision is not unreasonable simply because the client disagrees. The district court therefore properly rejected Chapman's claim that his attorney provided constitutionally ineffective assistance of counsel by refusing, over Chapman's instructions to the contrary, the trial court's offer of a mistrial without prejudice. Accordingly, we hereby affirm the district court's order denying Chapman's § 2255 motion.

*AFFIRMED*

MICHAEL, Circuit Judge, concurring in the judgment:

I concur in the judgment but write separately to express my belief that we should be resolving this case on much narrower grounds. As the majority recognizes, "Chapman's ineffective-assistance claim is a narrow one." *Ante* at 4. Chapman simply argues that under the particular circumstances of this case, he received ineffective assistance when his lawyer refused to follow his express instruction to accept the district court's offer of a mistrial without prejudice. Instead of affirming on the narrow ground that Chapman's lawyer acted reasonably, the majority sweeps broadly and decides that a lawyer's decision to refuse a mistrial over his client's wishes and without consultation can never constitute ineffective assistance. I believe such a broad rule is both ill-advised and unnecessary to resolve this case.

There are at least three types of decisions where counsel's failure to seek or follow client input before acting could result in constitutionally ineffective assistance: (1) fundamental decisions requiring informed consent from the client; (2) important decisions requiring consultation with the client; and (3) decisions where the client has expressly instructed counsel on a particular course. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004); *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1437 (3d Cir. 1996). The majority has focused exclusively on the first type, that is, the fundamental decisions described in *Jones*. Nothing in this case has convinced me that the list of fundamental decisions in *Jones* should be expanded. But focusing exclusively on the fundamental decision category inappropriately ignores the other two categories. In *Florida v. Nixon* the Supreme Court expressly recognized counsel's "duty to consult with the client regarding *important* decisions" as independent from the duty to both consult with the client *and* obtain his consent on *fundamental* decisions. 543 U.S. at 187 (emphasis added). The majority misreads this very portion of *Nixon* to support the proposition that for non-fundamental

decisions "[c]ounsel need not consult with the client about the matter *or* obtain the client's consent." *Ante* at 6-7 (emphasis added). There will be important decisions that require consultation with, but not consent from, the client. *See, e.g.*, *Weatherwax*, 77 F.3d at 1436 (duty to consult with client concerning possible mistrial motion after client's family raised fact that juror was reading prohibited materials). Similarly, there will be decisions on which counsel and client disagree that will at least require some form of accommodation. *See, e.g.*, *United States v. Gillis*, 773 F.2d 549, 560 (4th Cir. 1984) (defendant's right to self-representation on appeal satisfied by allowing him to submit supplemental brief).

In assessing counsel's failure to consult with his client or follow an express instruction, I would follow the Third Circuit's analysis in *Weatherwax*. There, the court held that "[t]he constitutional duty to consult regarding issues on which counsel has the last word requires only that counsel act reasonably in light of the circumstances and what is likely to be accomplished by a consultation." 77 F.3d at 1437. In assessing reasonableness, the Third Circuit weighed the lawyer's actions against the "number of important purposes" served by the duty to consult, including ensuring the client's ability to assist in his own defense, promoting open lawyer-client communications, and safeguarding the client's right to forgo his current representation if he disagrees with his lawyer. *Id.* at 1436-37. The reasonableness assessment is, of course, fact intensive and case specific.

I conclude that while the decision whether to accept a mistrial offered by the court will sometimes require a lawyer to consult with his client, it was nevertheless reasonable here for Billy Martin to refuse the offer against Chapman's expressed wishes and without consultation. The record does not indicate that Chapman even understood the difference between a mistrial with prejudice and a mistrial without prejudice, let alone the consequences of each in his case. Under these circumstances, *following* Chapman's instruction might well have

constituted ineffective assistance of counsel. A closer question is whether Martin should have asked the court for time to consult with Chapman concerning the offer, but I again conclude that Martin's actions were reasonable. The district court was demanding an answer from Martin then and there. Martin had to make a decision on the fly, and there is no evidence that consultation would have prompted Chapman to hold his position and request new counsel.

I would not foreclose the possibility that, in other situations, counsel's failure to consult with his client or follow his express, informed wishes would constitute constitutionally ineffective assistance. Because I agree with the majority that counsel was effective in Chapman's case, however, I concur in the result.