# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case Nos. 2019-0490 and 2021-0501, <u>State of New Hampshire v. Robert M. Fitzgerald, Jr.</u>, the court on November 7, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, Robert M. Fitzgerald, Jr., appeals his convictions on one count of kidnapping, <u>see</u> RSA 633:1, I (2016), two counts of second-degree assault, <u>see</u> RSA 631:2, I(f) (2016), one count of simple assault — domestic, <u>see</u> RSA 631:2-b, I(a) (2016), and one count of obstructing the reporting of a crime — domestic, <u>see</u> RSA 631:2-b, I(k)(1) (2016).  He argues that the Trial Court (<u>Smukler</u>, J.) erred when it denied his motion to dismiss the kidnapping indictment.  He also argues that the Trial Court (<u>Delker</u>, J.) erred when it subsequently denied his motion for a new trial based on the State's failure to disclose exculpatory evidence, and denied his motion for a new trial based on ineffective assistance of counsel.  We affirm in part, vacate in part, and remand.

I

The defendant was first tried in superior court on March 18, 2019.  During the trial, the victim provided testimony about certain information that the State had not previously disclosed to the defendant.  Defense counsel requested a mistrial; the State argued that a curative instruction could suffice.  The trial court granted the mistrial without prejudice.

A second jury trial was held in June 2019, at which the following evidence was presented.  At the time of the charged offenses, the defendant and the victim had been married for approximately six weeks.  On April 16, 2018, the victim returned from work and found court documents with the defendant's name on them taped to the door to her apartment.  She became upset after reading them, and assuming that he was at work, she called the defendant.  She told him about "what was listed on those documents" and that she "was extremely upset."  When she opened the door to her apartment, she found the defendant inside.  She told him that the marriage was over and that she wanted him to move out of her apartment.  He responded that she was not ending their marriage and that the documents were false.  She told him to "take his stuff and go" before she went to her second job as a waitress at a local restaurant.

Toward the end of her shift, the defendant appeared at the restaurant. He was slurring his words and smelled of alcohol. To avoid seeing him, the victim remained in the restaurant kitchen until he left. When the victim arrived home after her shift, the defendant was standing outside the apartment with his dog. Assuming that he was leaving, she walked past him into the apartment. As she headed from her bedroom to the bathroom, the defendant entered the apartment. She could see that "his things were still there." He told her that he was not leaving: "he wasn't breaking up this family." She told him to leave. She tried to return to the bedroom to get her phone to call the police. As she headed past him, he came behind her and pushed her into the wall. After she fell into the wall, she began crying, and then screamed: "[G]et out."

In response, the defendant came up behind her and put his arm around her neck and his hand over her face. She attempted to scream but was unable to breathe. When she finally stopped struggling, the defendant released her. When she stood up to try to run to her bedroom to retrieve her phone, he grabbed her and threw her on the couch. As she screamed and struggled to get away from him, he took one of the couch pillows and held it over her face. He told her that no one would miss her if she died and that he was going to kill her. When she again stopped struggling, he allowed her to sit up on the couch. The victim then went to her bedroom to attempt to call for help from her bedroom window, but the defendant slammed it closed and pushed her toward the bed and told her that she was not leaving. The victim's phone was on the bed, and a struggle ensued for the phone. The defendant ended up with the phone. The victim again attempted to run to the bedroom window, but the defendant again pushed her away from it. She ran toward the living room, and the defendant put his arm around her neck and dropped her to the floor. The defendant eventually allowed the victim to get up and go to the bathroom. The victim attempted to open the bathroom window, but the defendant shut the window and slammed the victim onto the toilet and held her there. The defendant thereafter allowed the victim to go to the living room and sit on the couch, where she asked for her phone back, pleading for him to let her go and let her call the police, but the defendant refused. Eventually, she went back to her bed. The defendant moved a table directly in front of the bedroom door and remained seated there until the victim fell asleep. The next morning the defendant allowed the victim to leave for work, where she contacted the police.

The defendant was subsequently charged with three counts of second degree assault — strangulation; four counts of simple assault — domestic; one count of criminal threatening; one count of kidnapping; and one count of obstructing the reporting of a crime — domestic. As previously noted, the first trial began on Monday, March 18, 2019. On the preceding Friday, March 15, between 4 and 5 p.m., during a meeting with the prosecutor (Attorney Topham), the victim advised the prosecutor for the first time about the court documents (a child support petition) that she had found taped to the door. The prosecutor shared this disclosure with defense counsel on Monday, March 18. The trial

2

court granted a brief recess to allow defense counsel to discuss the disclosure with his client. The parties then agreed to proceed without reference to the name of the documents or their contents. During cross-examination, defense counsel asked the victim about her pretrial meetings with the prosecutor, specifically asking her: "how many times have you spoken with Attorney Topham?" The victim indicated that she had done so on two occasions, once sometime around May 2018 and once on the previous Friday — March 15, 2019.

At the end of his cross-examination, defense counsel informed the trial judge that the victim's testimony regarding her encounter with the defendant when she returned home from her first job had not been disclosed to him. The prosecutor agreed, stating that he had mistakenly believed the information was in the police reports. Defense counsel then requested a mistrial. The trial judge ordered a recess in order to permit the parties and the judge to research mistrials. The court reconvened 25 minutes later. The parties then argued the motion for mistrial, after which the court granted a mistrial without prejudice, stating: "In this case, a significant portion of the victim's description and testimony about what happened that day was not provided to the Defense counsel until today, and he can't possibly incorporate that into his trial tactics or strategic planning with his client."

The defendant was retried in June 2019 and was convicted. He appealed to this court, challenging, inter alia, the denial of his motion to dismiss the kidnapping indictment.

In March 2020, the defendant filed a motion for a new trial, arguing that his counsel had provided ineffective assistance of counsel when counsel requested a mistrial at the March 2019 trial without the defendant's consent.[1] In August 2020, the defendant filed a motion for discovery alleging that a third meeting had taken place between the prosecutor and the victim on Monday, March 11, 2019, and that documentation of the meeting had not been provided to him. The State represented that the defendant had been given everything to which he was entitled but agreed to provide a note created by the victim-witness coordinator to document the March 11 meeting. The defendant thereafter filed a second motion for a new trial based on the prosecutor's failure to disclose exculpatory evidence.

In August 2021, the Trial Court (Delker, J.) issued an order denying each of the defendant's post-conviction motions. He appealed that order to this court. We accepted the discretionary appeal and consolidated it with the defendant's direct appeal.

---

[1] On April 13, 2020, we granted the defendant's assented-to motion for partial remand and stay pending final resolution of his motion for a new trial.

## II

We begin by considering the defendant's argument that the trial court erred in denying his motion to dismiss the kidnapping charge because: (1) "the evidence was insufficient to exclude reasonable conclusions that [the] defendant's intent was not to terrorize"; (2) the doctrine of merger required dismissal "because the acts of confinement were incidental to other offenses"; and (3) the multiple fines for two offenses resulted in the defendant being punished twice for the same offense in violation of the Double Jeopardy Clauses. We address each challenge in turn.

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore our standard of review is de novo. State v. Bell, 175 N.H. 382, 385 (2022). To prevail on his challenge, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it, in the light most favorable to the State, could have found guilt beyond a reasonable doubt. Id. When the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based on the evidence have been excluded. Id.

RSA 633:1, I, provides, in pertinent part, that a person is guilty of kidnapping "if he knowingly confines another under his control with a purpose to . . . [t]errorize him or some other person." RSA 633:1, I(c). The defendant argues that the circumstantial evidence failed to exclude the conclusion that his conduct was intended to save his marriage, not to terrorize the victim. We conclude that any such conclusion would be unreasonable. As the State aptly argues in its brief: "It is unreasonable, and bordering on absurd, to conclude that the defendant intended to save his marriage by beating up his wife and confining her to a terrifying situation." Moreover, even if we assume that the defendant's motive for his actions included a desire to prevent the victim from leaving and ending their marriage, the only reasonable conclusion that can be drawn from the evidence is that he sought to achieve that goal by confining and purposely terrorizing the victim. See State v. Bean, 153 N.H. 380, 387 (2006) (stating that conduct illuminates intent); cf. State v. Gordon, 161 N.H. 410, 415 (2011) ("Motive has been defined as supplying the reason that nudges the will and prods the mind to indulge in criminal intent." (quotation omitted)).

Next, the defendant contends that the kidnapping indictment includes factual allegations that formed the basis for other charges that were brought, including the charges for simple assault — domestic and obstructing reporting of a crime — domestic. He argues that all of those charges should have been merged.

4

The merger doctrine, in this context, prohibits a conviction for kidnapping based upon acts that fall within the definition of that crime but are merely incidental to another crime. This doctrine is one of fairness, prohibiting distortion of lesser crimes into much more serious crimes by excess of prosecutorial zeal. The doctrine, however, is not designed to merge "true" kidnappings into other crimes merely because the kidnappings were used to accomplish ultimate crimes of lesser or greater gravity. Whether restraint and movement are merely incidental to another crime or support kidnapping as a separate crime is a fact-specific determination based on the totality of the circumstances.

State v. Casanova, 164 N.H. 563, 566-67 (2013) (citations, quotations, and brackets omitted).

The touchstone under the merger doctrine is whether the abduction is so minimal, incidental and inseparable from the underlying crime that it does not fairly constitute a separate crime of kidnapping. Id. at 568. Here, the defendant's confinement of the victim was neither minimal nor incidental to the facilitation of another crime. We agree with the State that confinement was the defendant's primary objective.

The defendant next contends that his convictions for kidnapping and obstructing the reporting of a crime — domestic violate the Double Jeopardy provisions of the State and Federal Constitutions. See N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, XIV. We first review the matter under the State Constitution.

The defendant contends that this is a "double-description" case, in which the issue is whether two statutes describe separate offenses or merely provide different descriptions of the same offense. In "double-description" cases, "we examine whether proof of the elements of the crimes as charged will require a difference in evidence." State v. Ramsey, 166 N.H. 45, 51 (2014). The complaint charging obstructing the reporting of a crime alleged that the defendant did "[u]se physical force . . . against another to block that persons [sic] access to any cell phone . . . with the purpose of preventing, obstructing, or interfering with the report of any criminal offense . . . to a law enforcement agency to wit, he knowingly used physical force against [the victim], who is his wife, by physically grabbing her phone with the purpose of preventing her from reporting a criminal offense to a law enforcement officer." The indictment for kidnapping alleged that the defendant "knowingly kept his wife . . . under his control in their apartment when with the purpose to terrorize [the victim] he tackled her from behind as she attempted to leave the apartment, grabbed her cellphone away from her, slammed and locked an apartment window shut as [she] attempted to escape through the window, physically blocked the apartment front door with his body so [she] could not leave the apartment and screamed 'DO YOU WANT TO DIE? NO ONE WILL HEAR WHEN I KILL YOU.'"

5

Here, proof of the elements of the two crimes as charged required different evidence. For example, the kidnapping indictment required the State to prove, inter alia, that the defendant kept the victim under his control with the purpose to terrorize her. The obstructing report of a crime charge did not require such proof. Similarly, the obstructing report of a crime complaint required the State to prove that the defendant blocked the victim's access to her cell phone with the purpose of preventing her from reporting a criminal offense to a law enforcement agency. The kidnapping indictment did not require such proof. As the State notes, the evidence includes the victim's testimony that she begged the defendant for her phone back to let her call the police and he refused — evidence showing the defendant's purpose of preventing the victim from reporting a criminal offense to a law enforcement agency that was unnecessary to prove kidnapping.

Our analysis applying the State Constitution's "difference in evidence test" disposes of the defendant's claim under the Federal Constitution. See Blockburger v. United States, 284 U.S. 299, 304 (1932); State v. Sanchez, 152 N.H. 625, 632 (2005). Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution and conclude that the trial court did not err when it denied the defendant's motion to dismiss the kidnapping charge.

III

The defendant next argues that his trial counsel was constitutionally ineffective for: (1) failing to consult with him before obtaining the March 2019 mistrial; and (2) failing to move to dismiss on double jeopardy grounds before the retrial.

The defendant cites both the State and Federal Constitutions to support his claim. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends VI, XIV. The standard for determining whether a defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions. State v. Newton, 175 N.H. 279, 284 (2022). We review the constitutional competency of counsel's performance under the State Constitution, and rely on federal case law only for guidance. See id.

Both the State and Federal Constitutions guarantee a criminal defendant "reasonably competent assistance of counsel." Id. at 285. To prevail upon a claim of ineffective assistance of counsel, a defendant must demonstrate first that counsel's representation was constitutionally deficient, and second, that counsel's deficient performance actually prejudiced the outcome of the trial. Id.

To meet the first prong of this test, the defendant must show that counsel's representation fell below an objective standard of

6

reasonableness.  We judge the reasonableness of counsel's conduct based upon the facts and circumstances of that particular case, viewed from the time of that conduct.  As we have explained, judicial scrutiny of counsel's performance must be highly deferential; a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the inherent difficulties in making this evaluation, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Because the proper measure of attorney performance remains simply reasonableness under prevailing professional norms, to establish that his trial attorney's performance fell below this objective standard of reasonableness, the defendant must show that no competent lawyer would have engaged in the conduct of which he accuses his trial counsel.

To meet the second prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome.  The prejudice analysis considers the totality of the evidence presented at trial.  Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact.  Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met <u>de</u> <u>novo</u>.  A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective.

<u>Id</u>. (citations omitted).  The court may consider either prong of the test first.  <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).

The defendant argues that trial counsel at his first trial in March 2019 was ineffective because he moved for a mistrial without first consulting the defendant.  We have never before decided whether a defense attorney's failure to consult with the client before moving for a mistrial constitutes ineffective assistance of counsel.  Accordingly, we look to decisions from other jurisdictions for guidance.

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy.  That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision."  <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004) (quotations and citations omitted).

7

The only decisions that have been identified by the Supreme Court as belonging exclusively to the defendant are whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. The Supreme Court has never suggested that decisions about mistrials are of such a moment that they can be made only by the defendant himself . . . .

United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) (quotations and citation omitted).

The defendant does not now contend that the decision to request a mistrial is one that must be made by the client rather than by the attorney. Rather, he argues that counsel had a duty to consult with him before making the decision to request a mistrial. By failing to consult, the defendant argues, counsel's representation was constitutionally deficient.

Courts are divided on this issue. The State relies upon cases such as Chapman, which states that the decision to seek a mistrial is a tactical one to be made by counsel, not the client, id., and which concludes that when a decision is a tactical one left to the sound judgment of counsel, then counsel "need not consult with the client about the matter," id. at 369. The defendant, on the other hand, relies upon cases such as Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1436 (3d Cir. 1996), which recognizes a requirement that counsel consult with the client on important strategic and tactical decisions, even when counsel has the last word. The defendant argues that because his counsel failed to consult with him on this matter, he "received a mistrial he did not want."

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. . . . Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

Strickland, 466 U.S. at 688-89 (citations omitted) (emphasis added).

We decide this case keeping that purpose in mind. We need not decide whether to adopt the State's position that counsel need never consult with the client about tactical decisions such as moving for a mistrial. Assuming, without

8

deciding, that there is a constitutional duty to consult regarding issues on which counsel has the last word, we agree with the Weatherwax Court's statement that:

> [t]he constitutional duty to consult regarding issues on which counsel has the last word requires only that counsel act reasonably in light of the circumstances and what is likely to be accomplished by a consultation. When decisions must be made in the heat of battle at trial, for example, it will often be unreasonable to expect any consultation before the decision is made and implemented, either because the opportunity for meaningful consultation does not exist or because there is little if anything to be gained by consultation.

Weatherwax, 77 F.3d at 1437. In this case, following a hearing on the defendant's post-conviction motions for a new trial, the superior court credited trial counsel's testimony that the defendant "was not a very interested client" and "deferred to [counsel] on all legal decisions," and that counsel "believed [the defendant] would do the same thing with respect to the mistrial." Further, the court found that the defendant's claim, that he would have objected to the request for a mistrial at the time it was made, was not credible. Indeed, the court noted counsel's testimony that the defendant "was happy with the fact he was granted a new trial when [counsel] was able to explain the outcome to him immediately following the court's ruling granting a mistrial."

Furthermore, while the trial court took a break after counsel moved for a mistrial, counsel testified that he did not then have a long conversation with the defendant about what the mistrial would be because counsel did not have much time to prepare — counsel spent the entire break researching. Finally, counsel's reasons for seeking a mistrial were found by the trial court to be reasonable. Indeed, the trial judge who granted the mistrial, over the State's objection, found "manifest necessity" for the mistrial, stating:

> In this case, a significant portion of the victim's description and testimony about what happened that day was not provided to the Defense counsel until today, and he can't possibly incorporate that into his trial tactics or strategic planning with his client.

We conclude that the record demonstrates that counsel acted reasonably under the circumstances. It is apparent that little if anything would have been gained by consultation. We are not persuaded that the lack of consultation deprived the defendant of a fair trial. Accordingly, the defendant has failed to demonstrate that counsel's representation was constitutionally deficient.

We reach the same result under the Federal Constitution. See id.

9

The defendant next argues that counsel was also ineffective at his first trial because he failed to file a motion to dismiss based on intentional prosecutorial overreach. When prosecutorial overreach is intended to goad a defendant into requesting a mistrial, the Double Jeopardy Clause prohibits a retrial. State v. Zwicker, 151 N.H. 179, 188 (2004).

> "Goading" for the purposes of establishing that double jeopardy bars retrial is narrowly defined. Gross negligence by the prosecutor, or even intentional conduct that seriously prejudices the defense, is insufficient to be characterized as goading. Prosecutorial conduct that might be viewed as harassment or even overreaching, even if sufficient to justify a mistrial on defendant's motion, is not goading. Instead, there must be intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. Prosecutorial intent may be inferred from objective facts and circumstances.

State v. Verrill, 175 N.H. 428, 437 (2022) (quotations, citations, and brackets omitted).

Here, we choose to address the second prong of the ineffective assistance test first. In order for the defendant to demonstrate actual prejudice from the failure to file a motion to dismiss based on intentional prosecutorial overreach, he must show that such a motion would properly have been granted. See State v. Kepple, 155 N.H. 267, 273 (2007). We agree with the State that the defendant has failed to make that showing and that the record would not support it.

The defendant argues that the prosecutor's failure to disclose information from the victim regarding her interaction with the defendant before she left for her second job was the basis for the granting of the mistrial. The record would not support a finding that this failure "was intended to provoke the defendant into moving for a mistrial." Verrill, 175 N.H. at 437 (quotation omitted). When the issue arose, the prosecutor apologized for the failure, explaining that he had mistakenly believed that the undisclosed information was in the police reports. We see no objective facts or circumstances reflected in the record that would support a finding of "goading." Accordingly, we conclude that the defendant has failed to demonstrate actual prejudice from counsel's failure to move for dismissal based on intentional prosecutorial overreach.

We reach the same result under the Federal Constitution. See Oregon v. Kennedy, 456 U.S. 667, 676, 679 (1982).

IV

Finally, we consider the defendant's argument that the trial court erred in denying his motion for a new trial, following his convictions after his second trial, based on the State's "knowing failure to disclose exculpatory evidence."

10

The State and Federal Due Process Clauses require the State to disclose information favorable to the defendant if it is material to guilt or punishment. Verrill, 175 N.H. at 440. Favorable evidence is that which is admissible, likely to lead to the discovery of admissible evidence, or otherwise relevant to the preparation or presentation of the defense. State v. Shepherd, 159 N.H. 163, 170 (2009). Favorable evidence may include impeachment evidence. Id. Favorable evidence is "material" if there is a reasonable probability that, had it been disclosed to the defendant, the result of the proceeding would have been different. Verrill, 175 N.H. at 440. As the defendant correctly observes, we have held that our State Constitution provides greater protection to the defendant than does the Federal Constitution when the materiality of favorable evidence that has been knowingly withheld by the prosecution is at issue. See id. at 441. In such cases, the burden shifts to the State to prove beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict. Id. In this case, the defendant argues that the trial court erred in assigning to the defendant the burden to establish the materiality of the undisclosed evidence. The interpretation of a trial court order presents a question of law, which we review de novo. State v. Luikart, 174 N.H. 210, 215 (2021).

The evidence at issue is a note prepared by the victim-witness advocate following a meeting on March 11, 2019 of the victim, the prosecutor (DT), and the victim-witness advocate, which stated:

> [The victim] came in for trial prep today. DT showed her a new report we received from defense last week, that I did not know about, from her ex-boyfriend. He had no knowledge of the case at hand and the entire report was an attack on her character. DT said he will be fighting this and he does not think the man will be able to say any of this at trial because it is not relevant, but he wanted her to be aware of everything.
>
> At the end we scheduled for her to come back [F]riday at 3 for another run through. She was worried because she had forgotten some small details and was reminded when reading her application for protective order. She is worried the Jury will think she is lying if she does not remember every detail. DT told her that she could come back [F]riday and it will seem more coherent and strong. Today he was asking questions off the cuff and they went over a lot of information so it could be overwhelming. She is glad for another day to prepare and will be here [F]riday at 3pm.

The trial court's order summarized the defendant's challenge:

> He primarily takes issue with the following three sentences [in the March 11 note]: "She was worried because she had forgotten some small details . . . . She is worried the Jury will think she is lying if she does not remember every detail. [Attorney Topham] told her that she could come back [F]riday and it will seem more coherent

11

and strong." . . . From this, the defendant extrapolates that the March 11 meeting did not go well and the victim's testimony had substantive issues. His theory, essentially is that after her weak performance at the March 11 meeting, the victim returned on March 15 with a stronger, made-up story about the child support petition and it causing the argument leading to her assault. He claims that because the case rose and fell on the victim's testimony (due to the lack of physical evidence), he could have used the note to impeach her credibility in many ways, including asking how many times she had met with the State to prepare her story. . . .

The Court does not share the defendant's view of the March 11 note. There is nothing in the note, nor in [the victim-witness coordinator]'s or Attorney Topham's testimony, to suggest that the victim gave inconsistent stories or statements during her meeting with the State.

The court then observed that "even accepting that the State knowingly withheld the March 11 note, the defendant has failed to show that the note is material." The defendant contends that this language demonstrates that the trial court applied the wrong standard by requiring him to prove materiality rather than placing the burden upon the State. The State argues, however, that the trial court had already concluded that the March 11 note did not constitute <u>favorable</u> impeachment evidence. Therefore, the State contends, although the defendant correctly observes that the trial court misallocated the burden on the materiality prong after assuming that the State knowingly withheld the evidence, that error is of no consequence because the defendant failed to meet his initial burden of showing that the evidence was favorable.

Even if we assume, as the State contends, that the trial court ruled that the withheld evidence was not favorable, we agree with the defendant that the trial court erred in so ruling. As noted above, favorable evidence may include impeachment evidence. The March 11 note at a minimum indicates that the victim and the prosecutor had conducted an undisclosed preparatory "run-through" of her testimony before the meeting on March 15. The fact of the March 11 meeting itself is inconsistent with the victim's testimony on March 18, just one week after the meeting took place, when she did not reveal the existence of the March 11 meeting when asked how many times she had spoken with the prosecutor. As the defendant argues, the March 11 note could support a jury conclusion either that the victim was downplaying the amount of preparation she engaged in with the prosecutor or that her memory, even in the near term, is poor.

We conclude that the undisclosed evidence constitutes favorable evidence. As a remedy, the State argues that we should remand the case to the trial court to address whether the State knowingly withheld the evidence. The defendant

agrees, as do we.  Thereafter, the trial court shall determine whether the undisclosed evidence was material, allocating the burden of proof to the State if it determines that the evidence was knowingly withheld.  See Shepherd, 159 N.H. at 170.

Because the defendant prevails on this issue under the State Constitution, we need not address his claim under the Federal Constitution.  See State v. Ball, 124 N.H. 226, 237 (1983).

V

In conclusion, we affirm the defendant's convictions on direct appeal, as well as the denial of his motions for new trial based on ineffective assistance of counsel and double jeopardy.  We vacate the denial of his motion for new trial based on the State's failure to disclose evidence and remand for further proceedings consistent with this order.

Affirmed in part; vacated in part; and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Timothy A. Gudas,
Clerk**

13